**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

JESSIE ENGLES.,

Plaintiff,

vs.

SGT. JERRY JONES, RICHARD HARDY, C.O., JEFFREY CAVALUSSI, C.O., ELMER PARISH, SGT. ERIC MORTON, C.O., TRAVIS HILL, C.O., ERIC FARLY, C.O., P. HARRISON, NURSE AUDREY C. SYKES, ASSISTANT COMMISSIONER, MIKE RASMUS, JOHN DOE NOS. 1 through 5 and JOHN DOE NOS. 5 through 10.

Defendants.

**SECOND AMENDED COMPLAINT AND JURY DEMAND**

**Civil Action No.: 6:13-CV-6461 EAW**

Plaintiff, Jessie Engles, by his attorneys, Woods Oviatt Gilman LLP, for his Second Amended Complaint against Defendants, alleges as follows:

**PRELIMINARY STATEMENT**

1. This is an action for injunctive, declaratory and compensatory relief for violations of the Plaintiff's civil and constitutional rights pursuant to 42 U.S.C. § 1983 while the Plaintiff was an inmate at the Five Points Correctional Facility in Romulus, New York ("Five Points") and while a patient at the Central New York Psychiatric Center ("CNYPC") in Marcy, New York. In particular, Plaintiff contends that he was physically assaulted after a suicide attempt, was denied necessary medical care at NYPC, was threatened and intimidated against exercising his constitutional rights, was hampered in his efforts to obtain legal and judicial redress, was denied the right to practice his religion and was denied due process in connection with the disciplinary hearing held to assess the Plaintiff's conduct at the time of the assault.

## JURISDICTION AND VENUE

2. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.

3. Venue properly lies in this district pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events and omissions giving rise to the claims occurred in Romulus, New York, which is located within the Western District of New York.

## PARTIES

4. Plaintiff, Jessie Engles ("Plaintiff"), is, and at all times hereinafter mentioned was, an inmate housed at Five Points, a correctional facility under the jurisdiction of the New York State Department of Corrections ("DOCS").

5. Upon information and belief, Defendant, Jerry Jones is, and at all times hereinafter mentioned was, a DOCS corrections officer, with the rank of sergeant, assigned to Five Points.

6. Upon information and belief, Defendant, Eric Morton, is, and at all times hereinafter mentioned was, a DOCS corrections officer, with the rank of sergeant, assigned to Five Points.

7. Upon information and belief, Defendant, Travis Hill, is, and at all times hereinafter mentioned was, a DOCS corrections officer assigned to Five Points.

8. Upon information and belief, Defendant, Eric Farly, is, and at all times hereinafter mentioned was, a DOCS corrections officer assigned to Five Points.

9. Upon information and belief, Defendant, Jeffrey Cavalussi is, and at all times hereinafter mentioned was, a DOCS corrections officer assigned to Five Points.

10. Upon information and belief, Defendant, Elmer Parish is, and at all times hereinafter mentioned was, a DOCS corrections officer assigned to Five Points.

11. Upon information and belief, Defendant, P. Harrison, is, and at all times hereinafter mentioned was, a DOCS corrections officer assigned to Five Points.

12. Upon information and belief, Defendant, Michael Rasmus is, and at all times hereinafter mentioned was, an assistant commission of DOCS serving as a hearing officer for internal disciplinary matters and operates out of the DOCS offices in Albany, New York.

13. Upon information and belief, Defendant, Audrey C. Sykes, is, and at all times hereinafter mentioned was, a registered nurse and/or a medical health professional licensed in the State of New York, employed by the CNYPC.

14. Upon information and belief, Defendants, John Doe Nos. 1 through 5 are, and at all times hereinafter mentioned, were, DOCS corrections officers and/or other DOCS employees responsible for collecting and processing inmate grievances within Five Points.

15. Upon information and belief, Defendants, John Doe Nos. 6 through 10 are, and at all times hereinafter mentioned, were, DOCS corrections officers who were assigned to monitor the Plaintiff during the period August 17, 2010, to August 28, 2010.

**PROCEDURAL BACKGROUND**

16. Plaintiff filed his original complaint in this action on August 16, 2013 in the Northern District of New York (Docket No. 1).

17. On August 29, 2013, the matter was transferred to the Western District of New York (Docket No. 6).

18. The Plaintiff filed his amended complaint on June 17, 2014 (Docket No. 12).

19. On or about January 26, 2015, the defendants filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56 (Docket No. 25).

20. On February 23, 2015, defendant, Richard Hardy, joined the defendants' pending motion and sought dismissal of the case against him based upon official capacity grounds (Docket No. 33).

21. Plaintiff filed a motion to compel discovery on February 23, 2015, seeking responses to previously served discovery requests (Docket No. 34). The defendants opposed the Plaintiff's motion to compel discovery with a memorandum filed on March 9, 2015 (Docket No. 37) and the Plaintiff filed his reply papers on March 18, 2015 (Docket No. 38).

22. On June 2, 2015, the Plaintiff filed his opposition to the defendants' motion for summary judgment (Docket No. 43) and the defendants filed their reply papers on June 29, 2015 (Docket No. 44).

23. On November 16, 2015, the Court granted in part the defendants' motion to dismiss and denied in part and denied the Plaintiff's motion to compel discovery as moot. The Plaintiff's motion to appoint counsel was granted (Docket No. 46). The dismissal of the Plaintiff's complaint was without prejudice to the plaintiff's right to replead.

24. On January 11, 2016, the Court appointed Woods Oviatt Gilman, LLP, Donald W. O'Brien, Jr., Esq., of counsel, to represent the Plaintiff *pro bono*. The Court directed the Plaintiff to file an amended complaint within thirty (30) days of the filing of the order (Docket No. 57).

25. Upon Stipulation and on February 18, 2016, the Court extended the time for Plaintiff to file an amended complaint up to and including February 25, 2015 (Docket No. 59).

## FACTUAL BACKGROUND

### A. The Assault.

26. From on or about June of 2010 through August 28 of 2010, the Plaintiff was subjected to harassment and other mistreatment by DOCS employees acting under the color of

law as more particularly described below.

27. On August 16, 2010, the Plaintiff began to experience suicidal ideation as a result of ongoing harassment and mistreatment by DOCS employees.

28. On that date, Plaintiff informed Defendants, P. Harrison, Eric Morton and Corrections Lieutenant Labac of his (Plaintiff's) suicidal feelings.

29. Despite being informed by Plaintiff of his suicidal ideations, Defendant P. Harrison issued Plaintiff a razor, which the Plaintiff utilized in an attempt to end his life and thereby escape the harassment and mistreatment set forth above.

30. The Plaintiff complied with all prison staff directions when ordered by Defendant Eric Morton, to leave his cell in order to receive acute medical care for his cut wrists.

31. In fact, the Plaintiff required outside medical attention to treat the wounds on his wrists.

32. Due to the extreme blood loss and resulting weakness, Plaintiff fell to the floor on two occasions while under observation and was too weak to walk, let alone act in a combative fashion or otherwise offer resistance following his suicide attempt.

33. While under observation, Plaintiff was fully shackled, placed on a stretcher and pushed to the nursing clinic by Defendants Morton, Hill, Farly, Hardy and Parish. During the transfer, the Defendants used excessive force by assaulting the Plaintiff hitting him in his head, ribs, private parts, back and other locations.

34. While still on the stretcher, as the Plaintiff was restrained by Defendants Cavalussi, Hardy and Farly, he was struck by the corrections officers present at that time, including, but not limited to, Defendants Parish, Hardy and Hill. In the course of assaulting the Plaintiff, defendant Hill broke Plaintiff's finger and then advised the Plaintiff that he (Plaintiff) as lucky and that his treatment could have been worse.

35. During the assault, due, in part, to his weakness and the fact that he was fully shackled and restrained by numerous corrections officers, the Plaintiff did not resist, fight back or otherwise repel the assault against him. The corrections officers involved in the assault exploited the Plaintiff's condition by using excessive force when force was not needed and the Plaintiff posed no risk to their safety or the safety of others.

36. As a result of the assault, the Plaintiff sustained a fractured metacarpal, contusions to his head, hands, wrist, back and chest, causing pain, swelling and discomfort to his body, in particular, his hand. The Plaintiff suffered psychological and emotional harm and trauma and now suffers from flashbacks, nightmares and panic related to the assault and the mistreatment he received both before and after the assault.

37. Upon information and belief, video coverage of the assault demonstrates that the Plaintiff was passive during the incident in question and did not become combative or offer resistance at any time.

38. The Plaintiff was assaulted in front of Defendants Morton and Jones who, notwithstanding their superior rank, took no action whatsoever to stop the assault or otherwise restrain their subordinates.

39. Plaintiff later learned that Nurse Norma Leone had noted on the injury report form that the Plaintiff had received no injuries while under observation on August 16, 2010. Ms. Leone later testified, however, at the Disciplinary Hearing that she witnessed the above assault and saw the corrections officers striking the Plaintiff while he was fully shackled in the medical clinic, which caused him the injuries enumerated above.

## B. Threats and Intimidation.

40. In fact, following the assault, Defendant Jones threatened the Plaintiff with serious physical injury or death if he filed a grievance for the assault or otherwise tried to seek redress in court by filing a claim or lawsuit.

41. On February 3, 2011, during the 3:00 p.m. to 11:00 p.m. shift, the Plaintiff was verbally threatened, once again, by Defendant Jones who stated, in words or substance "get the f**k up." "Don't think I'm not aware that you filed a grievance regarding the 8/16/10 incident. You think you were slick by not mentioning any names but, if you try to file a lawsuit against us, your stay here won't be nice." Defendant Jones continued, in words or substances, "you will find yourself really hurt the next time around and you won't be transferred out of the facility, nor will you get out of the SHU (Special Housing Unit) for a long time if you try to f**k me over." Finally, Defendant Jones advised the plaintiff: "but if you don't f**k with me, or don't give any of my officers any problems, you don't have anything to worry about." This incident took place in 12 Block, A2 Company and was witnessed by the prisoner in the neighboring cell, Sean Benton, DIN No. 08B1260.

42. Plaintiff did file a grievance complaint regarding Defendant Jones' verbal threats before being transferred out of Five Points Correctional Facility. After receiving no response, the plaintiff filed an appeal to the Superintendent, rather than to the Commissioner. On or about May 3, 2011, the Commissioner responded to the Plaintiff's appeal and informed him to file another grievance concerning the issue because the first one was never processed or received. When refiled, it was treated as a late grievance in accordance with DOCS Directive 4040 with no further action being taken. Upon information and belief, John Doe Nos. 1 through 5 either failed or refused to process the Plaintiff's grievance complaint.

**C. Deprivation of the Right to Practice one's Religion**

43. Following the assault, the Plaintiff was placed in an observation stripped cell upon his return from the outside hospital where he was treated for his injuries. He remained in the observation stripped cell from August 17, 2010 to August 28, 2010.

44. During that period of time, the Plaintiff was in a deeply depressive state of mind and was supposed to receive his Ramadan meals following his daily fast. Shortly after his arrival in this cell, however, Defendant Jones, the corrections officer supervising his suicide watch directed that the Plaintiff's Ramadan meals be withheld. Under Defendant Jones' direction, the corrections officers who monitored Plaintiff's stay there (John Doe Nos 6-10) withheld meals from the Plaintiff for a period of seven (7) days straight. The Plaintiff was not provided with any breakfast, lunch or dinner until he was transferred and admitted to the Central New York Psychiatric Center on or about August 28, 2010.

**D. Deliberate Indifference/Medical Mistreatment**

45. On August 28, 2010, upon being admitted to the Central New York Psychiatric Center, Plaintiff was examined by Defendant, Nurse Audrey Sykes. Defendant Sykes instructed the Plaintiff that he could not have the splint which was ordered by the physicians who had treated him for his injuries because the splint allegedly posed a security risk. As a result, the splint, which the Plaintiff had been instructed to keep in place for four to six weeks, was denied him. The Plaintiff believes that the premature removal of the splint adversely affected the healing of his fingers and hand.

46. From August 28, 2010 to December 10, 2010, the Plaintiff was detained at the Central New York Psychiatric Center and was not allowed to have the splint on his hand to ensure that it would heal properly nor was his hand casted to prevent it from being reinjured. Because he did not have the splint and his hand was not casted, the Plaintiff suffered pain when

he was asleep and when his hand was accidently bumped into by others. As a result of the foregoing, the Plaintiff was denied adequate medical attention.

**E. Denial of Due Process/Access to the Courts**

47. The Plaintiff filed a grievance with the IGRC Office at Five Points Correctional Facility while he was at the Central New York Psychiatric Center within the twenty-one (21) days after the assault in accordance with DOCS Directive 4040 and filed a Notice of Intention to Sue with the New York State Attorney General's Office within ninety (90) days of the incident.

48. Shortly after his release from the Central New York Psychiatric Center, a disciplinary hearing was held in regards to the August 16, 2010 incident. At that hearing, over which Defendant Rasmus presided, the Plaintiff was not provided with a fair and impartial hearing and was denied basic rights at the hearing. The Plaintiff objected to the denial of his due process rights in an effort to preserve them for appeal within thirty (30) days of the completion of such hearing. In particular, the Plaintiff was denied the right to call witnesses on his own behalf, he was never provided with any witness refusal forms and the hearing officer repeatedly and impermissibly rephrased questions posed by the Plaintiff before they could be answered by the witness so as to effectively deny the Plaintiff his constitutional right to confront his accuser(s).

49. In addition, the Plaintiff pointed out at the hearing how the forms and memoranda prepared by and/or submitted by the participants in the assault were falsified and/or self-contradictory, thereby raising significant credibility issues for the hearing officer. Nevertheless, Defendant Rasmus still found the Plaintiff guilty, resulting in restrictions in the conditions of his confinement, a denial of good time and a loss of phone, packages and commissary privileges.

50. The Plaintiff appealed the adverse finding against him by Defendant Rasmus.

## AS AND FOR A FIRST CAUSE OF ACTION

### Excessive Use of Force and Failure to Intervene

51. On or about August 16, 2010, defendants Morton, Hill, Farly, Hardy, Parish and Cavalussi used excessive force upon the Plaintiff, without justification and despite the Plaintiff's obvious disabilities and full restraint.

52. On August 16, 2010, defendants Morton and Jones, notwithstanding their position as superior officers and their authority over the other corrections officers present, failed to intervene to prevent the assault upon the Plaintiff or otherwise exercise control over, or otherwise restrain, the corrections officers under their command.

53. As a result of the excessive use of force, failure to intervene, deliberate indifference and other action on the part of defendants Jones, Morton, Hill, Farly, Parish and Cavalussi, the Plaintiff was deprived of his civil and constitutional rights in violation of 42 U.S.C. §§ 1983 and 1985, as well as the Eighth and Fourteenth Amendments to the U.S. Constitution.

## AS AND FOR A SECOND CAUSE OF ACTION

### Threats and Intimidation

54. The Plaintiff repeats and re-alleges the allegations of paragraphs "1" through "53" as if more fully set forth herein.

55. On February 3, 2011, Defendant Jones, in an effort to prevent the Plaintiff from exercising his civil and constitutional rights and vindicating those rights through lawful administrative and judicial process, threatened and intimidated the Plaintiff by warning him that, if he exercised his civil and constitutional rights, he would face serious consequences, including physical harm, adverse conditions of confinement and other losses of his liberty interests.

56. Based upon the foregoing, the Plaintiff was deprived of his civil and constitutional rights in violation of 42 U.S.C. §§ 1983 and 1985, as well as the Eighth and Fourteenth Amendments to the U.S. Constitution.

**AS AND FOR A THIRD CAUSE OF ACTION**

**Deliberate Indifference/Failure to Provide Proper Medical Care**

57. Plaintiff repeats and re-alleges the allegations of paragraphs "1" through "56" as if more fully set forth herein.

58. Beginning on August 28, 2010, Defendant Sykes, engaged in conduct which constituted deliberate indifference to a serious medical need in that she knew the Plaintiff had been prescribed a splint for his hand as necessary treatment for a fracture and, nevertheless, disregarded the Plaintiff's medical needs, thereby creating an excessive risk to the Plaintiff's health and safety.

59. As a result of the foregoing, the Plaintiff was deprived of his civil and constitutional rights in violation of 42 U.S.C. § 1983, as well as the Eighth and Fourteenth Amendments to the U.S. Constitution.

**AS AND FOR A FORTH CAUSE OF ACTION**

**Deprivation of Plaintiff's First Amendment Right to Practice his Religion**

60. Plaintiff repeats and re-alleges the allegations of paragraphs "1" through "59" as if more fully set forth herein.

61. Starting on or about August 17, 2010 and extending until August 28, 2010, the Plaintiff's First Amendment rights to practice his religion were violated by the refusal on the part of defendant Jones and John Doe Nos. 6 through 10, the corrections officers who followed defendant Jones' instructions to provide the Plaintiff with Ramadan meals or, for that matter, any meal for nearly one week during his confinement for suicide watch.

62. As a result of the foregoing, the Plaintiff was deprived of his civil and constitutional rights in violation of the First Amendment to the United States Constitution and/or 42 U.S.C. §§ 1983 and 1985, as well as the Eighth and Fourteenth Amendments to the U.S. Constitution.

**AS AND FOR A FIFTH CAUSE OF ACTION**

**Denial of Due Process – Access to the Courts**

63. Plaintiff repeats and re-alleges the allegations of paragraphs "1" through "62" as if more fully set forth herein.

64. Following the threats made by defendant Jones, the Plaintiff timely filed a grievance in the designated receptacle within Five Points Correctional Facility.

65. Despite this timely filing, the Plaintiff received no response to this grievance and, as a result, appealed the effective denial of his grievance through inaction.

66. After Plaintiff was instructed to refile the grievance, notwithstanding the expiration of the deadline for filing such grievances, the grievance was rejected as late in accordance with the applicable DOCS rules and regulations.

67. Upon information and belief, John Doe Nos. 1 through 5 were responsible for the failure of Plaintiff's grievance to be properly handled and processed.

68. As a result of the foregoing, the Plaintiff was deprived of his civil and constitutional rights in violation of 42 U.S.C. §1983 and the Fourteenth Amendment to the United States Constitution.

**AS AND FOR A SIXTH CAUSE OF ACTION**

**Due Process – Disciplinary Hearing**

69. Plaintiff repeats and re-alleges the allegations of paragraphs "1" through "68" as if more fully set forth herein.

70. The disciplinary hearing convened to address the Plaintiff's alleged misconduct in connection with the August 16, 2010 incident was conducted in such a way as to deprive the Plaintiff of his procedural and substantive due process rights.

71. Among other things, the Plaintiff was prevented from (1) securing evidence in his defense; (2) calling witnesses in his defense; (3) being provided with witness refusal forms; (4) fairly confronting the witnesses against him; (5) being exonerated notwithstanding the absence of any credible evidence against him and (6) having he hearing presided over by a hearing officer who was not predisposed, biased and/or prejudiced against him.

72. As a result of the adverse finding by the hearing officer, the Plaintiff was subjected to a loss of liberty interest, including, but not limited to, additional restrictions in the terms of his confinement, loss of good time and the loss of privileges relating to telephone usage, receipt of packages and commissary, all in violation of 42. U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.

**DEMAND FOR A JURY TRIAL**

Plaintiff hereby requests trial by jury on all issues so triable.

**WHEREFORE**, Plaintiff, Jessie Engles., demands judgment as follows:

A. Injunctive relief for so long as the Plaintiff is confined at the Five Points Correctional Facility including, but not limited to, a judgment enjoining the Defendants, individually and collectively, and all others acting on their behalf or in their stead, from violating the Plaintiff's civil and constitutional rights, using excessive force, restricting his access to lawful administrative, judicial and other legal process, impinging his First Amendment rights to practice his religion in the absence of any overriding security interests; threatening and intimidating the Plaintiff in an effort to prevent him from lawfully exercising his civil and constitutional rights; and otherwise violating the constitution, statutes and regulations of the United States and the State of New York governing DOCS and its employees;

B. Declaratory relief annulling the disciplinary disposition adverse to the Plaintiff in connection with August 16, 2010 incident and expunging all references thereof from Plaintiff's institutional and parole records;

C. Judgment further declaring the respective rights and responsibilities of the parties;

D. Directing the restoration of all privileges, good time and other liberty interests which were taken away from the Plaintiff as a result of the adverse ruling following the disciplinary hearing held in connection with the August 16, 2010 incident;

E. Awarding compensatory damages in an amount to be determined by the trier of fact against Defendants Jones, Hardy, Cavalussi, Parish, Morton, Hill, Farly and Harrison for the injuries sustained by the Plaintiff as a result of the August 16, 2010 assault;

F. Awarding compensatory damages in an amount to be determined by the trier of fact against Defendant Sykes for any aggravated or enhanced injuries or disabilities resulting from her deliberate indifference to the Plaintiff's medical needs;

G. Awarding compensatory damages in an amount to be determined by the trier of fact against defendant Jones for the personal injuries, psychological trauma and emotional damage resulting from said defendant's threats and intimidation;

H. Awarding attorneys' fees to the extent allowed by law;

I. Awarding the costs and disbursements of this action; and

J. Granting such other and further relief as to this Court seems just and proper.

DATED: February 25, 2016
Rochester, New York

WOODS OVIATT GILMAN LLP



By: ______________________________

Donald W. O'Brien, Jr., Esq.
*Attorneys for Plaintiff*
700 Crossroads Building
2 State Street
Rochester, New York 14614
585.987.2800