UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



———————————————————————

JESSIE ENGLES,

        Plaintiff,

    v.

SGT. JERRY JONES, et al.,

        Defendants.

———————————————————————

**DECISION AND ORDER**

6:13-CV-6461 EAW

## INTRODUCTION

Plaintiff Jessie Engles ("Plaintiff") commenced the instant action on August 16, 2013. (Dkt. 1). The operative pleading is the Second Amended Complaint (Dkt. 60), which asserts various claims under 42 U.S.C. §§ 1983 and 1985 related to Plaintiff's incarceration at the Five Points Correctional Facility ("Five Points") and his treatment at the Central New York Psychiatric Center ("CNYPC").

Discovery in this matter has closed (Dkt. 85), and defendants Sgt. Jerry Jones ("Sgt. Jones"), C.O. Richard Hardy, C.O. Jeffrey Cavalussi, C.O. Elmer Parish, Sgt. Eric Morton, C.O. Travis Hill, C.O. Eric Farly, C.O. P. Harrison ("C.O. Harrison"), Nurse Audrey C. Sykes ("Nurse Sykes"), and Assistant Commissioner Mike Rasmus ("A.C. Rasmus") (collectively "Defendants") have filed a motion for partial summary judgment (Dkt. 88). In particular, Defendants seek summary judgment as to: (1) Plaintiff's claims against C.O. Harrison, Nurse Sykes, and A.C. Rasmus; (2) Plaintiff's claim for denial of access to the

courts; (3) Plaintiff's claim for denial of his right to practice his religion; (4) Plaintiff's claim of "threats and intimidation" against Sgt. Jones; and (5) Plaintiff's claims for violations of 42 U.S.C. § 1985. (*Id.*). For the reasons set forth below, Defendants' motion is denied as to Plaintiff's claims against C.O. Harrison and granted in all other respects.

## BACKGROUND

### I.    Procedural Background

Plaintiff, then proceeding *pro se*, commenced this action on August 16, 2013. (Dkt. 1).[1]  By leave of court, Plaintiff filed an Amended Complaint on June 17, 2014. (Dkt. 12). Defendants moved for dismissal or summary judgment as to the Amended Complaint (Dkt. 25; Dkt. 33); the Court granted in part and denied in part Defendants' motions on November 16, 2015, while also granting Plaintiff leave to file a second amended complaint as to certain claims (Dkt. 46).

Thereafter, on January 11, 2016, the Court appointed counsel to represent Plaintiff. (Dkt. 57).   Through counsel, Plaintiff filed the Second Amended Complaint on February 25, 2016. (Dkt. 60).  The Second Amended Complaint contains the following causes of action: (1) excessive use of force and failure to intervene as to defendants Morton, Hill, Farly, Hardy, Parish, and Cavalussi; (2) "threats and intimidation" as to Sgt. Jones; (3) deliberate indifference/failure to provide proper medical care as to Nurse Sykes; (4) deprivation of Plaintiff's First Amendment right to practice his religion as to Sgt. Jones

---

1    Plaintiff initially commenced this action in the United States District Court for the Northern District of New York; the matter was transferred to this Court pursuant to 28 U.S.C. § 1406(a) on August 29, 2013. (Dkt. 6).

and various John Doe defendants; (5) denial of access to the Courts as to various John Doe defendants; and (6) denial of due process in connection with a disciplinary hearing as to A.C. Rasmus. (*Id.* at 10-13).

Discovery in this matter closed on June 1, 2017. (Dkt. 79). On May 16, 2018, Defendants filed the instant motion for partial summary judgment. (Dkt. 88). Plaintiff filed a response on September 4, 2018 (Dkt. 97) and Defendants replied on October 1, 2018 (Dkt. 99).

## II.    **Factual Background**

The following facts are taken from Defendants' Local Rule 56 Statement of Facts (Dkt. 88-1) and Plaintiff's response thereto (Dkt. 97-3), as well as the declarations and accompanying exhibits submitted by the parties. With respect to background facts that the parties have not briefed in connection with the instant motion, the Court has referenced the Second Amended Complaint.

In August 2010, Plaintiff was incarcerated at Five Points. Plaintiff testified at his deposition that he was entitled to have headphones as a special accommodation, but that no headphones had been provided to him. (Dkt. 97 at 25-26). Plaintiff further testified that on August 16, 2010, he informed C.O. Harrison that he needed his headphones or he was going to "wind up cutting up." (*Id.* at 25). Plaintiff maintains that C.O. Harrison stated he would "look and check into it" and "do what [he could] do to get [Plaintiff] some" headphones. (*Id.*).

Plaintiff testified that, thereafter, Sgt. Jones "made rounds" and Plaintiff told him that he was "losing it" and that if he did not get his headphones, he was "going to wind up

hurting [himself]." (*Id.*). Plaintiff also repeated his warnings to non-defendant Lieutenant Lavack, stating that if he did not receive the headphones that day, he was "going to wind up cutting up." (*Id.* at 26). Lieutenant Lavack allegedly replied that the staff would "deal with [Plaintiff] then when [he] cut up," which Plaintiff interpreted as Lieutenant Lavack "calling [his] bluff." (*Id.*).

Approximately 15 minutes after Plaintiff spoke with Lieutenant Lavack, C.O. Harrison came to Plaintiff's cell with the "shower cart" and gave Plaintiff a razor and a nail clipper. (*Id.* at 27). Plaintiff testified that he immediately clipped the safety guard off the razor and used it to slit his wrist. (*Id.*). Plaintiff stated that he was bleeding for approximately 30 minutes before C.O. Harrison returned to collect the razor, and that he "let[] [the blood] leak out all over the floor" and "rubb[ed] it on the walls, into the toilet area." (*Id.*).

Plaintiff was thereafter transported for treatment for his wounds. (Dkt. 60 at ¶¶ 30-34). Plaintiff claims that while he was on a stretcher being transported, he was restrained by defendants Cavalussi, Hardy, and Farly, and defendants Parish, Hardy, and Hill assaulted him, which resulted in defendant Hill breaking Plaintiff's finger, among other injuries. (*Id.* at ¶¶ 34, 36). Plaintiff further alleges that defendant Morton and Sgt. Jones were present during the assault and failed to intervene. (*Id.* at ¶ 38).

Plaintiff was taken to the Cayuga Medical Center ("CMC") on August 16, 2010. (Dkt. 97 at 30). Plaintiff was treated for a laceration to his left wrist and a fracture of his left third metacarpal bone. (*Id.*). A splint was placed on Plaintiff's left hand. (*Id.* at 35). Plaintiff was discharged from CMC on August 17, 2010. (*Id.*). The discharge instructions

related to his hand fracture state that "[t]he usual treatment is splinting for four to six weeks" and that he should not remove the splint until instructed to do so by his doctor. (*Id.*).

In the Second Amended Complaint, Plaintiff alleges that upon his return from CMC on August 17, 2010, and until he was admitted to CNYPC, he was held in the "observation stripped cell" at Five Points. (Dkt. 60 at ¶ 43). Plaintiff claims that during this period of time, he was "supposed to receive his Ramadan meals following his daily fast" but that Sgt. Jones, who was supervising his suicide watch, ordered that Plaintiff's Ramadan meals be withheld. (*Id.* at ¶ 44). Plaintiff alleges that pursuant to Sgt. Jones' directions, defendants John Doe Nos. 6-10 withheld all meals from Plaintiff for a seven-day period. (*Id.*).

On August 27, 2010, Plaintiff was admitted to CNYPC. (Dkt. 88-1 at ¶ 10; Dkt. 97-3 at ¶ 10). Nurse Sykes, a registered nurse, was assigned to CNYPC at that time. (Dkt. 88-1 at ¶¶ 3-5; Dkt. 97-3 at ¶¶ 3-5). Upon admission, Plaintiff was examined by non-defendant Dr. Ahmed for psychiatric issues and by non-defendant Dr. Kaskiw for physical issues. (Dkt. 88-1 at ¶ 14; Dkt. 97-3 at ¶ 14). At the time of admission, a notation was made incorrectly stating that Plaintiff had a splint on his left hand for a fracture of the fourth metacarpal (as opposed to his actual injury, a fracture of his third metacarpal). (Dkt. 88-1 at ¶ 18; Dkt. 97-3 at ¶ 19). Dr. Kaskiw examined Plaintiff's hand when he was admitted and noted that there was slight swelling and a decreased range of motion but that Plaintiff was not in any pain. (Dkt. 88-1 at ¶¶ 20-23; Dkt. 97-3 at ¶¶ 20-23).

Splints are not allowed on the wards at CNYPC because they contain metal, which presents a safety concern. (Dkt. 88-1 at ¶ 31; Dkt. 97-3 at ¶ 31). In accordance with this policy, Plaintiff's splint was removed, and Dr. Kaskiw ordered that the fourth and fifth fingers on Plaintiff's left hand be "buddy taped" together." (Dkt. 88-1 at ¶¶ 32-33; Dkt. 97-3 at ¶¶ 32-33). Non-defendant Nurse Mullaly removed the splint from Plaintiff's finger and Nurse Sykes applied the buddy tape. (Dkt. 88-5 at ¶ 14). Plaintiff's hand continued to be monitored and the buddy taping was discontinued by Dr. Kaskiw on September 14, 2010. (Dkt. 88-1 at ¶¶ 45, 52; Dkt. 97-3 at ¶¶ 45, 52). Plaintiff's medical records do not show any lasting issues related to his fractured metacarpal. (Dkt. 88-1 at ¶ 55; Dkt. 97-3 at ¶ 55).

In opposition to Defendants' motion for summary judgment, Plaintiff has submitted a sworn declaration by Maria Martins, M.D. ("Dr. Martins"), an emergency medicine physician. (Dkt. 97-2). Dr. Martins states that the removal of Plaintiff's splint and the buddy taping of his fourth and fifth fingers "was not consistent with the standard of care" and "did not result in the appropriate immobilization of [Plaintiff's] left hand." (*Id*. at ¶ 6). Dr. Martins further indicates that Dr. Kaskiw and Nurse Sykes "proceeded on the basis of inaccurate information and, as a result, implemented an incorrect plan of care." (*Id*. at ¶ 7).

Upon returning to Five Points from CNYPC, Plaintiff was charged with various rules violations related to the events of August 16, 2010. (Dkt. 88-1 at ¶ 59; Dkt. 97-3 at ¶ 59). A.C. Rasmus conducted a disciplinary hearing related to the charges that concluded on January 5, 2011 (the "Disciplinary Hearing"). (Dkt. 88-1 at ¶ 60; Dkt. 97-3 at ¶ 60). A.C. Rasmus found Plaintiff guilty of four rules violations and imposed a punishment of

60-days confinement in the special housing unit (the "SHU"), two months loss of good-time credits, and loss of package, commissary, and phone privileges. (Dkt. 88-2 at 24). The SHU sentence was suspended until August 7, 2011, and was ultimately never served by Plaintiff. (Dkt. 88-1 at ¶¶ 62-63; Dkt. 97-3 at ¶¶ 62-63). Moreover, the time for implementing that sentence has now passed, and so Plaintiff will never be required to serve it. (Dkt. 88-2 at ¶¶ 17-19). There is no record that A.C. Rasmus's determination based on the Disciplinary Hearing was ever reversed or expunged. (Dkt. 88-1 at ¶ 68; Dkt. 97-3 at ¶ 68).

Plaintiff alleges that on February 3, 2011, Sgt. Jones verbally threatened him, telling him that if he filed a lawsuit regarding the events of August 16, 2010, his "stay [at Five Points] won't be nice." (Dkt. 60 at ¶ 41). Plaintiff alleges that Sgt. Jones told him, in sum and substance, that if he pursued a claim against Sgt. Jones, Sgt. Jones would harm Plaintiff and cause him to be housed in the SHU. (*Id.*). Plaintiff claims that he filed a grievance regarding Sgt. Jones' verbal threats against him, but that "[u]pon information and belief, John Does Nos. 1 through 5 either failed or refused to process" his grievance. (*Id.* at ¶ 42).

The Department of Corrections and Community Supervision's ("DOCCS") records indicate that Plaintiff filed and appealed to completion only one grievance during the time period relevant to this litigation. (Dkt. 88-1 at ¶ 75; Dkt. 97-3 at ¶ 75). That grievance relates solely to Plaintiff's claims of assault and denial of medical treatment related to the events of August 16, 2010, and makes no mention of any threats by Sgt. Jones, the denial of Ramadan meals, or failure to process any other grievances submitted by Plaintiff.

## DISCUSSION

### I.  Standard of Review

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact. . . ." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014). "Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial." *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103 (W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)). Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown*, 654

F.3d at 358. Indeed, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

## II.   Claims Against C.O. Harrison

Defendants seek summary judgment as to Plaintiff's claims against C.O. Harrison. In support of this request, Defendants note that: (1) the sole allegation against C.O. Harrison is that he gave Plaintiff the razor Plaintiff used to cut himself; (2) Plaintiff does not allege that C.O. Harrison was present for or participated in the assault upon him; and (3) Plaintiff has not included C.O. Harrison as a defendant in any of the six causes of action set forth in the Second Amended Complaint. (Dkt. 88-7 at 6-7). Plaintiff argues in opposition that the allegations in the Second Amended Complaint, which Plaintiff reiterated at his deposition, establish that C.O. Harrison was deliberately indifferent to a risk of danger to Plaintiff's safety. (Dkt. 97-4 at 6-7). In reply, Defendants argue that the Second Amended Complaint does not contain a deliberate indifference claim with respect to C.O. Harrison. (Dkt. 99-2 at 1-2).

The Court finds, on the record before it, that summary judgment as to C.O. Harrison is not warranted. The Court acknowledges that the Second Amended Complaint does not explicitly state a deliberate indifference claim as to C.O. Harrison. However, it is well-established that "[t]he function of the pleadings is to give opposing parties notice of the facts on which the pleader will rely, and, in the absence of prejudice to the opposing party, the court may allow the pleadings to be amended to conform them to the evidence at any

time, even after judgment." *Wierzbic v. Cty. of Erie*, No. 13-CV-978S, 2018 WL 550521, at *11 (W.D.N.Y. Jan. 25, 2018) (quotation omitted). Moreover, "an issue raised for the first time in a motion for summary judgment may start the amendment process." *Id.* (quotation omitted); *see also Chartier v. Matthews Assocs.*, No. 93 CIV. 1212 (PKL), 1994 WL 582938, at *2 (S.D.N.Y. Oct. 20, 1994) ("A district court may, in its sound discretion, 'construe[ ] [a party's] summary judgment motion also as a motion to amend [that party's pleading] under Fed. R. Civ. Pro. 15(a).'") (alterations in original) (quoting *Block v. First Blood Associates*, 988 F.2d 344, 350 (2d Cir. 1993)).

Here, the Court finds it appropriate to construe Plaintiff's opposition to Defendants' motion for summary judgment as a request to amend the Second Amended Complaint to assert a deliberate indifference claim as to C.O. Harrison and to grant that request. For the reasons set forth below, the factual allegations set forth in the Second Amended Complaint (and reiterated by Plaintiff at deposition) are sufficient to support a deliberate indifference claim as to C.O. Harrison and the allegations put Defendants on notice as to the basis for that claim. Accordingly, "there is no basis for Defendants to claim surprise or prejudice by the . . . claim[.]" *Wierzbic*, 2018 WL 550521, at *11 (on a motion for summary judgment, deeming complaint amended to include trespass claim because although "trespass was not a named cause of action," the factual allegations were "sufficient to state a claim for trespass and put Defendants on notice of a trespass claim"). Accordingly, the Court will permit Plaintiff to file a Third Amended Complaint that contains an express claim for deliberate indifference to serious medical needs against C.O. Harrison. To be clear, the Third Amended Complaint cannot contain new factual allegations, but is solely

for the purpose of clarifying the record and setting forth explicitly the legal theory on which C.O. Harrison was included as a defendant in this matter. Plaintiff must file the Third Amended Complaint by no later than January 11, 2019, and Defendants must file their Answer thereto by no later than January 25, 2019. <u>The Third Amended Complaint should comport with the instant Decision and Order in all respects and include only those claims (and Defendants) as to which the Court has allowed Plaintiff to proceed.</u>

The Court further finds that there are genuine issues of material fact regarding Plaintiff's deliberate indifference claim against C.O. Harrison. "The Eighth Amendment explicitly prohibits the infliction of cruel and unusual punishment. . . . A prisoner advancing an Eighth Amendment claim for denial of medical care must allege and prove deliberate indifference to a serious medical need." *Jean v. Barber*, No. 9:09-CV-430 MAD/GHL, 2011 WL 2975218, at *4 (N.D.N.Y. July 21, 2011) (quotation omitted). "[T]here are both objective and subjective requirements to succeed on an Eighth Amendment claim regarding serious mental health needs. First, the danger posed by the deliberate indifference must be 'sufficiently serious' from an *objective* perspective; and second, the defendant must have acted with deliberate indifference to that need (*i.e., subjectively* failed to address the danger)." *Young v. Choinski*, 15 F. Supp. 3d 194, 199 (D. Conn. 2014) (emphasis in original).

In the specific context of a suicide risk, "[c]ourts which have considered the issue have ruled that in the context of suicide, jailers are not required to safeguard every inmate;" however, they are required to protect inmates "presenting a 'strong likelihood of suicide.'" *Jean*, 2011 WL 2975218, at *4 (quoting *Burke v. Warren County Sheriff's Dep't*, No. 90–

CV–597, 1994 WL 6755042, at *6 (N.D.N.Y. Nov. 25, 1994)); *see also Young*, 15 F. Supp. 3d at 199 ("propensities to attempt suicide, harm oneself, and/or exhibit severe depression or anxiety attacks" are "sufficiently serious" to support an Eighth Amendment claim). A "previous threat" is sufficient to establish a strong likelihood of suicide. *Jean*, 2011 WL 2975218, at *4.

Here, Plaintiff testified at his deposition that he informed C.O. Harrison that, if he did not receive his requested headphones, he was going to "wind up cutting up." (Dkt. 97 at 25). A reasonable jury could find that this was a threat of suicide. Plaintiff further testified that despite having witnessed this explicit threat of self-harm, C.O. Harrison nonetheless provided Plaintiff with a razor the very same day. (*Id.* at 27). Were a jury to credit this testimony, it could reasonably conclude that C.O. Harrison was deliberately indifferent to Plaintiff's serious mental health needs—namely, his propensity to attempt suicide or otherwise harm himself. *See Young v. Choinski*, 15 F. Supp. 3d 172, 185 (D. Conn. 2014) (denying motion for summary judgment where the plaintiff inmate informed the defendant corrections officer that he was "feeling suicidal" and the defendant failed to take any action to obtain mental health assistance for the plaintiff); *cf. Kelsey v. City of N.Y.*, 306 F. App'x 700, 703 (2d Cir. 2009) (noting that "deliberate indifference [is] lacking where officers take affirmative and reasonable steps to protect detainees from suicide"). Accordingly, summary judgment as to Plaintiff's claim against C.O. Harrison is not warranted.

## III.    Claims Under 42 U.S.C. § 1985

In the Second Amended Complaint, Plaintiff purports to assert his excessive use of force and failure to intervene, "threats and intimidation," and free exercise of religion claims pursuant to 42 U.S.C. § 1985, as well as 42 U.S.C. § 1983. (Dkt. 60 at ¶¶ 53, 56, 62). Defendants argue that, to the extent these claims are premised on 42 U.S.C. § 1985, no reasonable jury could find in Plaintiff's favor. The Court agrees.

Section 1985 prohibits conspiracies to violate an individual's civil rights. To prevail on a § 1985 conspiracy claim, a plaintiff must show: "1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015) (quoting *Britt v. Garcia*, 457 F.3d 264, 269 n.4 (2d Cir. 2006)). "The conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus." *Id.* (quotation omitted).

Here, Defendants argue that there is no evidence tending to show a conspiracy, nor any evidence of discriminatory animus. (Dkt. 88-7 at 7-8). Defendants further argue that, in any event, the intracorporate conspiracy doctrine bars a § 1985 claim against DOCCS employees acting within the scope of their employment. (*Id.* at 8). Plaintiff's opposition papers fail to respond to these arguments.

"In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence

of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. Mar. of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). Here, Defendants have pointed to an absence of any evidence to support a finding of conspiracy or a finding of discriminatory animus, both of which are essential elements of a § 1985 claim. Plaintiff has failed, in opposition, to produce or identify any such evidence. *See Hall v. Bevier*, No. 06-CV-00505F, 2009 WL 3165604, at *4 (W.D.N.Y. Sept. 28, 2009) (granting summary judgment as to § 1985 claim where the plaintiff failed to submit any evidence supporting a claim of discriminatory animus or establishing the existence of a conspiracy). Moreover, Defendants are correct that Plaintiff's § 1985 claims are barred by the intracorporate conspiracy doctrine. *See Richard v. Leclaire*, No. 915CV00006BKSTWD, 2017 WL 4349381, at *5 (N.D.N.Y. Sept. 29, 2017) (noting the "appropriateness of applying the [intracorporate conspiracy] doctrine in a prison setting" and dismissing claims against DOCCS employees). Accordingly, Defendants have satisfied their burden of establishing their entitlement to summary judgment as to Plaintiff's § 1985 claims.

## IV. Deliberate Indifference Claim as to Nurse Sykes

Defendants request summary judgment as to Plaintiff's Eighth Amendment deliberate indifference claim as to Nurse Sykes. Defendants argue that no reasonable jury could conclude that Nurse Sykes had the required state of mind to support a deliberate indifference claim. For the reasons that follow, the Court agrees.

As noted above, the Eighth Amendment prohibits cruel and unusual punishment, which encompasses deliberate indifference to an inmate's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). "The deliberate indifference standard

- 14 -

requires the plaintiff to prove that the prison official knew of and disregarded the plaintiff's serious medical needs." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998). "'Deliberate indifference' describes a mental state more blameworthy than negligence; but a plaintiff is not required to show that the defendant acted for the very purpose of causing harm or with knowledge that harm will result. Deliberate indifference is a state of mind that is the equivalent of criminal recklessness." *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (internal quotations and citations).

Here, Defendants argue that regardless of whether Plaintiff has established that he had a serious medical need, there is no evidence that Nurse Sykes acted with deliberate indifference. (Dkt. 88-7 at 10-14). Instead, Defendants argue the evidence of record demonstrates that Nurse Sykes (and the other medical staff at CNYPC) "did their best to address [Plaintiff's] concerns." (*Id.* at 11). The Court agrees with Defendants that, on the record before it, no reasonable jury could find that Nurse Sykes knew of and disregarded Plaintiff's medical needs.

Plaintiff's claims against Nurse Sykes are based on his contention that she and Dr. Kaskiw "disregard[ed] the discharge instructions" from CMC and did not "bother[] to review the [CMC] records" before deciding that buddy taping Plaintiff's fingers was medically appropriate. (Dkt. 97-4 at 8-9). Plaintiff argues that, because of this purported failure to review the CMC records, Nurse Sykes had a "mistaken understanding of the nature of Plaintiff's injuries"—namely, she was unaware that he sustained a fracture to his third metacarpal, "which is not a finger but a bone of the hand"—based on which she incorrectly thought that buddy taping Plaintiff's fingers "would provide the necessary

immobilization to allow the fracture of Plaintiff's hand to heal properly." (*Id.*).

Plaintiff's deliberate indifference claim against Nurse Sykes is defective in several ways, most significantly because it is inconsistent with the uncontroverted evidence of record. In direct contradiction to Plaintiff's claim that Nurse Sykes and Dr. Kaskiw simply disregarded the discharge instructions from CMC, Nurse Sykes has submitted a sworn declaration indicating that she did not have access to Plaintiff's medical records from CMC when she treated him in August 2010. (Dkt. 99 at ¶¶ 8-12). Nurse Sykes further explained that it was not unusual, when a patient is admitted to CNYPC from DOCCS, for "paperwork from an outside hospital" not to accompany that patient. (*Id.* at ¶¶ 13-16). As such, the only information Nurse Sykes had at the time she was treating Plaintiff was a statement from DOCCS that he had fractured his fourth metacarpal. (*Id.* at ¶ 19). Nurse Sykes cannot be held liable for information that was unavailable to her, nor could any reasonable jury find, on the record before the Court, that she deliberately ignored the discharge instructions from CMC, as Plaintiff argues.

Plaintiff's reliance on Dr. Martins' declaration to establish deliberate indifference is also unavailing, for multiple reasons.[2] First, Dr. Martins has offered her expert opinion that Nurse Sykes' actions did not comport with the appropriate medical "standard of care." (Dkt. 97-2 at ¶ 6). However, it is well-established that expert testimony that a defendant "deviated significantly from the appropriate standard of care . . . constitutes, at most, a

---

[2]     Defendants argue that Dr. Martins' declaration should be disregarded because Plaintiff did not identify her as an expert witness or provide an expert report. (Dkt. 99-2 at 3-4). Because the Court concludes that Dr. Martins' declaration is insufficient to establish deliberate indifference by Nurse Sykes, it does not reach this argument.

medical malpractice claim which may be cognizable in a state court but not in a federal § 1983 action." *Bowman v. Campbell*, 850 F. Supp. 144, 147 (N.D.N.Y. 1994); *see also Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) ("[N]egligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim."). Second, Dr. Martins' opinion is based on her knowledge that Plaintiff had suffered a fracture in the third metacarpal, but that information was not available to Nurse Sykes at the time she treated Plaintiff. In other words, nothing in Dr. Martins' declaration suggests that Nurse Sykes' actions in buddy taping Plaintiff's fingers were taken recklessly or in bad faith, as opposed to being a sincere (if ultimately ineffectual) attempt to immobilize the fracture in Plaintiff's hand. To the contrary, Dr. Martins acknowledges that the buddy taping was based on a "misunderstanding of the true nature of [Plaintiff's] fracture." (Dkt. 97-2 at ¶ 13). Mistakes and misunderstandings in providing medical treatment do not constitute deliberate indifference. *See Estelle*, 429 U.S. at 105-06 ("an inadvertent failure to provide adequate medical care" does not violate the Eighth Amendment).

The Court rejects Plaintiff's argument that it was inappropriate for Dr. Kaskiw and Nurse Sykes to take into account the potential danger of allowing Plaintiff to possess a metal splint in determining the appropriate medical course of action. Plaintiff presented a known suicide risk. As the Court discussed in the context of Plaintiff's claims against C.O. Harrison, Nurse Sykes and the other personnel at CNYPC were therefore under an obligation to take reasonable steps to prevent Plaintiff from harming himself. As such, it was wholly appropriate for CNYPC staff to take into account the potential of a metal splint

to be sharpened and used for inflicting harm in determining whether buddy taping was a preferable alternative. The same is true for the other alternative treatments suggested by Dr. Martins. In particular, Nurse Sykes explained that it would be inappropriate for a suicidal patient to be given an ACE bandage or lengths of gauze because they could be used in an attempt to hang oneself, and that an Orthoglass cast could be removed and used as a weapon. (Dkt. 99 at ¶¶ 38-43). These are not merely arbitrary rules, as Plaintiff seems to suggest, but necessary considerations when dealing with patients with a propensity for self-harm.

In sum, the record before the Court establishes, at most, that Nurse Sykes was mistaken in her opinion that buddy taping Plaintiff's fingers was a medically appropriate course of treatment, because she lacked all the pertinent information. This is insufficient to demonstrate deliberate indifference to Plaintiff's medical needs. Accordingly, Defendants' motion for summary judgment is granted as to Plaintiff's claim against Nurse Sykes.[3]

## V.     <u>Failure to Exhaust Administrative Remedies</u>

In his Second Amended Complaint Plaintiff asserts a claim for "threats and intimidation" against Sgt. Jones and a claim for deprivation of Plaintiff's First Amendment right to the free exercise of his religion (based on the alleged denial of Ramadan meals) as to Sgt. Jones and several John Doe defendants. (Dkt. 60 at ¶¶ 54-56, 60-62). Defendants

_____

[3]     Defendants argue in the alternative that Nurse Sykes is entitled to qualified immunity. (Dkt. 88-7 at 14-16). Because the Court finds that Plaintiff has failed to adduce evidence sufficient to maintain a claim against Nurse Sykes, it need not and does not consider this alternative argument.

seek summary judgment as to these two claims, contending that Plaintiff failed to exhaust his administrative remedies with respect to them.

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . ., or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.A. § 1997e. "[T]he PLRA's exhaustion requirement applies to 'all inmate suits about prison life, whether they involve general circumstances or particular episodes.'" *Lawrence v. Goord*, 304 F.3d 198, 200 (2d Cir. 2002) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)).

To satisfy the PLRA's exhaustion requirement, "prisoners in New York must ordinarily follow a three-step [DOCCS] grievance process. The first step in that process is the filing of a grievance with the Inmate Grievance Resolution Committee. Next, the inmate may appeal an adverse decision to the prison superintendent. Finally, the inmate may appeal the superintendent's decision to the Central Office Review Committee ('CORC'). In general, it is only upon completion of all three levels of review that a prisoner may seek relief in federal court under § 1983." *Crenshaw v. Syed*, 686 F. Supp. 2d 234, 236 (W.D.N.Y. 2010) (internal citation omitted).

"[T]he PLRA does not require the exhaustion of all administrative remedies, but only those that are 'available' to the inmate. 'To be "available" under the PLRA, a remedy must afford "the possibility of some relief for the action complained of.'" *Hubbs v. Suffolk Cty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015) (quoting *Abney v. McGinnis*, 380 F.3d 663, 667 (2d Cir. 2004)). The Supreme Court has recognized three circumstances in which

- 19 -

an administrative remedy is "unavailable": (1) "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when the "administrative scheme" is "so opaque that it becomes, practically speaking, incapable of use"; and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S. Ct. 1850, 1859-60 (2016). "Whether an administrative remedy was available to a prisoner in a particular prison or prison system is ultimately a question of law, even when it contains factual elements." *Id.*

With respect to the burden of proof, "failure to exhaust is an affirmative defense" which "must be pleaded and proved by a defendant." *Lopez v. Cipolini*, 136 F. Supp. 3d 570, 580 (S.D.N.Y. 2015) (citations and quotations omitted). However, once a defendant demonstrates that the plaintiff has not exhausted his administrative remedies, "the burden of proof shifts to the plaintiff to show that his case falls under at least one of the exceptions" to the exhaustion requirement. *Perry v. Rupert*, No. 9:10-CV-1033 LEK/TWD, 2013 WL 6816795, at *4 (N.D.N.Y. Dec. 20, 2013); *see also Hubbs v. Suffolk Cty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015) (once defendants meet their initial burden of showing failure to exhaust, the burden shifts to the plaintiff to "demonstrate that other factors . . . rendered a nominally available procedure unavailable as a matter of fact").

In this case, Defendants have met their initial burden of demonstrating that Plaintiff failed to exhaust his threats and intimidation claim and his free exercise claim. DOCCS' records regarding Plaintiff show that he "filed and appealed to completion only one

grievance at Five Points Correctional Facility around the time of the alleged attack in August 2010." (Dkt. 88-1 at ¶ 75). This grievance, a copy of which has been submitted to the Court, relates solely to Plaintiff's claims of assault and denial of medical care and contains no mention of threats and intimidation by Sgt. Jones or denial of Ramadan meals. (Dkt. 88-3 at 30).

Plaintiff maintains that, notwithstanding the lack of any record, he did file a grievance regarding Sgt. Jones' actions, which was improperly processed. (Dkt. 97-4 at 12-14). Plaintiff states that he cannot provide proof of such filing because "all of his legal paperwork was lost at Wende Correctional Facility." (*Id.*). In the alternative, Plaintiff argues that the "extreme emotional turmoil" he was experiencing excuses his failure to file grievances. (*Id.* at 14).

On the record before the Court, there are no genuine issues of material fact regarding Plaintiff's failure to exhaust his administrative remedies. Defendants have demonstrated through admissible evidence that there is no record of Plaintiff having grieved his threats and intimidation claim or his free exercise claim. Plaintiff's unsupported assertion that he filed a grievance but that it was somehow lost or destroyed is insufficient to establish a genuine issue of material fact. *See Scott v. Kastner-Smith*, 298 F. Supp. 3d 545, 555 (W.D.N.Y. 2018) ("[C]ourts have consistently held . . . that an inmate's general claim that his grievance was lost or destroyed does not excuse the exhaustion requirement." (quotation omitted)); *Mims v. Yehl*, No. 13-CV-6405-FPG, 2014 WL 4715883, at *4 (W.D.N.Y. Sept. 22, 2014) (inmate's "unsupported statement" that he has submitted a grievance is "insufficient at the summary judgment stage"); *Veloz v. N.Y.*, 339 F. Supp. 2d

505, 516 (S.D.N.Y. 2004) ("[An] inmate's unsupported claims that his grievances were lost at the Grievance Committee Office or destroyed by officers . . . fails to excuse [the] inmate from fully grieving remedies[.]" (citation omitted)).

Plaintiff's argument that he was experiencing emotional turmoil that prevented him from filing grievances is similarly unavailing. Plaintiff rests his argument on the "special circumstances" exception to the exhaustion requirement previously recognized by the Second Circuit. (*See* Dkt. 97-4 at 14 (citing *Hemphill v. N.Y.*, 380 F. 3d 680, 686 (2d Cir. 2004)). However, the Supreme Court in *Ross* expressly rejected the application of any such exception, holding that "the PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.'" 136 S. Ct. at 1856; *see also Scott*, 298 F. Supp. 3 at 551 (noting that "the third prong of *Hemphill*, relating to 'special circumstances,' was abrogated by the Supreme Court's decision in *Ross*"). "This Court is not aware of any cases post-*Ross* . . . to have found . . . that a prisoner's failure to exhaust was excused because that prisoner's mental health condition rendered unavailable otherwise-available administrative remedies." *Galberth v. Washington*, No. 14 CIV. 691 (KPF), 2017 WL 3278921, at *10 (S.D.N.Y. July 31, 2017), *aff'd*, 743 F. App'x 479 (2d Cir. 2018). To the contrary, as noted by the *Galberth* court, "[w]here courts have been presented with inward-looking justifications for a failure to exhaust, which are based in a prisoner's subjective sense of what was available, such justifications have been rejected." *Id.* (collecting cases).

In any event, even assuming that Plaintiff's emotional turmoil could excuse his failure to exhaust in theory, there is no evidence that Plaintiff was actually rendered

incapable of using the grievance process. To the contrary, Plaintiff's emotional state did not prevent him from filing and appealing to completion a grievance related to the alleged assault and denial of medical care. *See Bennett v. James,* 737 F. Supp. 2d 219, 227 (S.D.N.Y. 2010), *aff'd,* 441 F. App'x 816 (2d Cir. 2011) (inmate's claim that his physical and emotional condition prevented him from exhausting his administrative remedies was inconsistent with having filed two federal lawsuits during the relevant time period). Under these circumstances, Defendants have borne their burden of demonstrating that Plaintiff failed to exhaust his administrative remedies, and Plaintiff has not shown that any exceptions to the exhaustion requirement apply. As such, Defendants are entitled to summary judgment as to Plaintiff's claim for threats and intimidation by Sgt. Jones and Plaintiff's claim for denial of his right to the free exercise of his religion.

## VI.    Denial of Access to Courts Claim

In the Second Amended Complaint, Plaintiff asserts a denial of access to the courts claim as to five John Doe defendants, based on the alleged failure to properly process his grievance. (Dkt. 60 at ¶¶ 63-68). These John Doe defendants have never been identified. Defendants seek summary judgment on this claim based on the failure to identify the John Doe defendants and further argue that, in any event, there is no constitutional right to a grievance process. (Dkt. 88-7 at 20-21). Plaintiff has not responded to these arguments.

Defendants are entitled to summary judgment on Plaintiff's claim for denial of access to the courts. Discovery in this matter has closed and there is no indication in the record before the Court that the identity of the John Doe defendants has been ascertained. Dismissal of claims against John Doe defendants is appropriate where a plaintiff "has had

ample time and opportunity to discover the identity of the John Doe Defendants and serve them," but has failed to do so. *Jones v. Rock*, No. 9:12-CV-0447 NAM/TWD, 2015 WL 791547, at *21 (N.D.N.Y. Feb. 24, 2015); *see also Coward v. Town & Vill. of Harrison*, 665 F. Supp. 2d 281, 299 (S.D.N.Y. 2009) ("The John Doe Defendants are entitled to summary judgment on the grounds . . . that Plaintiff had ample time to identify them but has failed to do so or to demonstrate why he has been unable to do so in the five years since he initiated this lawsuit."). As such, the Court finds that Defendants are entitled to summary judgment as to Plaintiff's denial of access to the courts claim because that claim is asserted solely against John Doe defendants who have never been identified.

## VII.  Due Process Claim Against A.C. Rasmus

In the Second Amended Complaint, Plaintiff alleges that A.C. Rasmus' conduct of the Disciplinary Hearing violated his right to due process. (Dkt. 60 at ¶¶ 69-72). Defendants seek summary judgment as to this claim, arguing that Plaintiff cannot show the deprivation of a protected liberty interest, because (1) the 60-day SHU sentence was suspended and never served and (2) the loss of good-time credits cannot be challenged in a § 1983 proceeding. (Dkt. 88-7 at 21-25). Plaintiff has not responded to this aspect of Defendants' motion.

To maintain a claim for violation of the right to either procedural or substantive due process, Plaintiff must demonstrate the deprivation of a protected liberty interest. *Baez v. Pinker*, 673 F. App'x 50, 52 (2d Cir. 2016); *see also Israel v. Bradt*, 228 F. Supp. 3d 237, 239 (W.D.N.Y. 2017). "However, lawfully incarcerated persons retain only a narrow range of protected liberty interests." *Klos v. Haskell*, 48 F.3d 81, 86 (2d Cir. 1995) (quotation

omitted). "To establish a constitutionally protected liberty interest triggering due process concerns, plaintiff must show that he was subjected to an atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Israel*, 228 F. Supp. 3d at 239. If a prisoner-plaintiff "cannot establish that he had a protected liberty interest in being free from the punishment that was imposed upon him as a result of [a] hearing, he has no due process claim under the Fourteenth Amendment." *Scott v. Albury*, 156 F.3d 283, 286 (2d Cir. 1998).

Defendants are correct that the suspended 60-day SHU sentence does not constitute a protected liberty interest. *See Young v. Hoffman*, 970 F.2d 1154, 1156 (2d Cir. 1992) (where the plaintiff did not serve the sentence imposed at a disciplinary hearing, he "suffered no interference with a liberty interest and has no valid claim for relief"); *Crenshaw v. Korbar*, No. 09-CV-6167L, 2013 WL 1681833, at *3 (W.D.N.Y. Apr. 17, 2013) ("To make out a valid Fourteenth Amendment claim for a denial of due process, plaintiff must show that defendants deprived him of a protected liberty interest. Plaintiff can make no such showing, for the simple reason that he never served any time on the charges [at issue].").

Defendants are also correct that Plaintiff cannot maintain a § 1983 claim based on the loss of good-time credits. The loss of good-time credits "impacts the overall length of confinement" and "[w]hen a litigant makes a constitutional challenge to a determination that affects the overall length of his imprisonment, the 'sole federal remedy is a writ of habeas corpus.'" *King v. Wenderlich*, No. 14-CV-6491-FPG, 2018 WL 3756751, at *5 n.1 (W.D.N.Y. Aug. 8, 2018) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973)).

Moreover, pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994), a plaintiff seeking money damages "for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid ... must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486-487. "In a subsequent case, *Edwards v. Balisok*, 520 U.S. 641 (1997), the Court made clear that *Heck's* favorable termination rule applies to challenges made under § 1983 to procedures used in disciplinary proceedings that deprived a prisoner of good-time credits." *Peralta v. Vasquez*, 467 F.3d 98, 103 (2d Cir. 2006). Here, there is no indication (and Plaintiff does not argue) that A.C. Rasmus' determination at the Disciplinary Hearing has ever been reversed, expunged, or otherwise called into question. Accordingly, Plaintiff cannot challenge the loss of his good-time credits in this § 1983 action.

The other penalties imposed by A.C. Rasmus (loss of package, commissary, and phone privileges) (*see* Dkt. 88-2 at 24) do not rise to the level of deprivation of a protected liberty interest. *See, e.g., Johnson v. Enu*, No. 08-CV-158 (FHS/DNH), 2011 WL 3439179, at *12 (N.D.N.Y. July 13, 2011) (suspension of recreation, commissary, and phone privileges does not implicate a protected liberty interest); *Smart v. Goord*, 441 F. Supp. 2d 631, 640 (S.D.N.Y. 2006) ("the loss of phone, package, and commissary privileges does not give rise to a protected liberty interest"). Accordingly, the Court agrees with Defendants that Plaintiff cannot establish that he was deprived of a protected liberty interest

and therefore cannot maintain a claim for deprivation of due process. The Court accordingly grants Defendants' motion for summary judgement as to Plaintiff's due process claim against A.C. Rasmus.

## CONCLUSION

For the foregoing reasons, Defendants' motion for partial summary judgment (Dkt. 88) is denied as to Plaintiff's claim against C.O. Harrison and granted in all other respects. Plaintiff's opposition to Defendants' motion (Dkt. 97) is deemed a request to amend the Second Amended Complaint to assert a deliberate indifference claim as to C.O. Harrison and is granted. Plaintiff is directed to file a Third Amended Complaint in conformity with the instant Decision and Order by no later than January 11, 2019. Defendants shall file an Answer to the Third Amended Complaint by not later than January 25, 2019. The Clerk of Court is directed to terminate Nurse Audrey C. Sykes, Assistant Commissioner Mike Rasmus, and John Does Nos. 1 through 10 as defendants in this matter.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: December 28, 2018
    Rochester, New York