UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JESSIE ENGLES,

                                                  Plaintiff,

                                  vs.

SGT. JERRY JONES, RICHARD HARDY, C.O.,
JEFFREY CAVALUSSI, C.O., ELMER PARISH,
SGT. ERIC MORTON, C.O., TRAVIS HILL, C.O.,
ERIC FARLY, and C.O., P. HARRISON,

                                                  Defendants.

**THIRD AMENDED COMPLAINT AND JURY DEMAND**

Civil Action No.:  6:13-CV-6461 EAW

Plaintiff, Jessie Engles, by his attorneys, Woods Oviatt Gilman LLP, for his Third Amended Complaint against Defendants, alleges as follows:

**PRELIMINARY STATEMENT**

1. This is an action for injunctive, declaratory and compensatory relief for violations of the Plaintiff's civil and constitutional rights pursuant to 42 U.S.C. § 1983 while the Plaintiff was an inmate at the Five Points Correctional Facility in Romulus, New York ("Five Points") In particular, Plaintiff contends that he was subjected to deliberate indifference to his legitimate medical needs, was physically assaulted after a suicide attempt, and was denied due process in connection with the disciplinary hearing held to assess the Plaintiff's conduct at the time of the assault.

**JURISDICTION AND VENUE**

2. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.

3. Venue properly lies in this district pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events and omissions giving rise to the claims occurred in Romulus, New York, which is located within the Western District of New York.

## PARTIES

4. Plaintiff, Jessie Engles ("Plaintiff"), is, and at all times hereinafter mentioned was an inmate housed at Five Points, a correctional facility under the jurisdiction of the New York State Department of Corrections ("DOCS").

5. Upon information and belief, Defendant, Jerry Jones at all times hereinafter mentioned was a DOCS corrections officer, with the rank of sergeant, assigned to Five Points.

6. Upon information and belief, Defendant, Eric Morton at all times hereinafter mentioned was a DOCS corrections officer, with the rank of sergeant, assigned to Five Points.

7. Upon information and belief, Defendant, Travis Hill at all times hereinafter mentioned was a DOCS corrections officer assigned to Five Points.

8. Upon information and belief, Defendant, Eric Farly at all times hereinafter mentioned was a DOCS corrections officer assigned to Five Points.

9. Upon information and belief, Defendant, Jeffrey Cavalussi at all times hereinafter mentioned was a DOCS corrections officer assigned to Five Points.

10. Upon information and belief, Defendant, Elmer Parish at all times hereinafter mentioned was a DOCS corrections officer assigned to Five Points.

11. Upon information and belief, Defendant, P. Harrison at all times hereinafter mentioned was a DOCS corrections officer assigned to Five Points.

**PROCEDURAL BACKGROUND**

12. Plaintiff filed his original complaint in this action on August 16, 2013 in the Northern District of New York (Docket No. 1).

13. On August 29, 2013, the matter was transferred to the Western District of New York (Docket No. 6).

14. The Plaintiff filed his amended complaint on June 17, 2014 (Docket No. 12).

15. On or about January 26, 2015, the defendants filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56 (Docket No. 25).

16. On February 23, 2015, defendant, Richard Hardy, joined the defendants' pending motion and sought dismissal of the case against him based upon official capacity grounds (Docket No. 33).

17. Plaintiff filed a motion to compel discovery on February 23, 2015, seeking responses to previously served discovery requests (Docket No. 34). The defendants opposed the Plaintiff's motion to compel discovery with a memorandum filed on March 9, 2015 (Docket No. 37) and the Plaintiff filed his reply papers on March 18, 2015 (Docket No. 38).

18. On June 2, 2015, the Plaintiff filed his opposition to the defendants' motion for summary judgment (Docket No. 43) and the defendants filed their reply papers on June 29, 2015 (Docket No. 44).

19. On November 16, 2015, the Court granted in part the defendants' motion to dismiss and denied in part and denied the Plaintiff's motion to compel discovery as moot. The Plaintiff's motion to appoint counsel was granted (Docket No. 46). The dismissal of the Plaintiff's complaint was without prejudice to the plaintiff's right to replead.

20. On January 11, 2016, the Court appointed Woods Oviatt Gilman, LLP, Donald W. O'Brien, Jr., Esq., of counsel, to represent the Plaintiff *pro bono*. The Court directed the Plaintiff to file an amended complaint within thirty (30) days of the filing of the order (Docket No. 57).

21. Upon Stipulation and on February 18, 2016, the Court extended the time for Plaintiff to file an amended complaint up to and including February 25, 2015 (Docket No. 59).

22. On December 28, 2018, the Court granted in part and denied in part a motion for summary judgment brought by the Defendants. In its Decision and Order (Docket No. 101), the Court granted summary judgment as to: (1) Plaintiff's claims against Defendants. Nurse Audrey C. Sykes and A.C. Rasmus; (2) Plaintiff's claims for denial of access to the courts; (3) Plaintiff's claims for denial of his rights to practice his religion; (4) Plaintiff's claims of "threats and intimidation" against Defendant Sgt. Jerry Jones; and (5) Plaintiff's claims for violations of 42 § 1985. The Court denied summary judgment as to Plaintiff's claims against Defendant, Corrections Officer, P. Harrison, and permitted the Plaintiff to amend his complaint to set forth explicitly the theory on which Defendant Harrison was included in the action. This third amended complaint has been amended to reflect the Court's disposition of the Defendants' summary judgment motion.

## FACTUAL BACKGROUND

**A.   The Assault.**

23. From on or about June of 2010 through August 28 of 2010, the Plaintiff was subjected to harassment and other mistreatment by DOCS employees acting under the color of law as more particularly described below.

24. On August 16, 2010, the Plaintiff began to experience suicidal ideation as a result of ongoing harassment and mistreatment by DOCS employees.

25. On that date, Plaintiff informed Defendants, P. Harrison, Eric Morton and Corrections Lieutenant Labac of his (Plaintiff's) suicidal feelings.

26. Despite being informed by Plaintiff of his suicidal ideations, Defendant P. Harrison issued Plaintiff a razor, which the Plaintiff utilized in an attempt to end his life and thereby escape the harassment and mistreatment set forth above.

27. The Plaintiff complied with all prison staff directions when ordered by Defendant Eric Morton, to leave his cell in order to receive acute medical care for his cut wrists.

28. In fact, the Plaintiff required outside medical attention to treat the wounds on his wrists.

29. Due to the extreme blood loss and resulting weakness, Plaintiff fell to the floor on two occasions while under observation and was too weak to walk, let alone act in a combative fashion or otherwise offer resistance following his suicide attempt.

30. While under observation, Plaintiff was fully shackled, placed on a stretcher and pushed to the nursing clinic by Defendants Morton, Hill, Farly, Hardy and Parish. During the transfer, the Defendants used excessive force by assaulting the Plaintiff hitting him in his head, ribs, private parts, back and other locations.

31. While still on the stretcher, as the Plaintiff was restrained by Defendants Cavalussi, Hardy and Farly, he was struck by the corrections officers present at that time, including, but not limited to, Defendants Parish, Hardy and Hill. In the course of assaulting the Plaintiff, defendant Hill broke Plaintiff's finger and then advised the Plaintiff that he (Plaintiff) as lucky and that his treatment could have been worse.

32. During the assault, due, in part, to his weakness and the fact that he was fully shackled and restrained by numerous corrections officers, the Plaintiff did not resist, fight back or otherwise repel the assault against him.  The corrections officers involved in the assault exploited the Plaintiff's condition by using excessive force when force was not needed and the Plaintiff posed no risk to their safety or the safety of others.

33. As a result of the assault, the Plaintiff sustained a fractured metacarpal, contusions to his head, hands, wrist, back and chest, causing pain, swelling and discomfort to his body, in particular, his hand.  The Plaintiff suffered psychological and emotional harm and trauma and now suffers from flashbacks, nightmares and panic related to the assault and the mistreatment he received both before and after the assault.

34. Upon information and belief, video coverage of the assault demonstrates that the Plaintiff was passive during the incident in question and did not become combative or offer resistance at any time.

35. The Plaintiff was assaulted in front of Defendants Morton and Jones who, notwithstanding their superior rank, took no action whatsoever to stop the assault or otherwise restrain their subordinates.

36. Plaintiff later learned that Nurse Norma Leone had noted on the injury report form that the Plaintiff had received no injuries while under observation on August 16, 2010.  Ms. Leone later testified, however, at the Disciplinary Hearing that she witnessed the above assault and saw the corrections officers striking the Plaintiff while he was fully shackled in the medical clinic, which caused him the injuries enumerated above.

### B. Deliberate Indifference.

37. The refusal of Defendant, C.O. P. Harrison, to heed Plaintiff's complaints of harassment and mistreatment and Defendant Harrison's actions in furnishing Plaintiff with a razor, notwithstanding the fact that Plaintiff had expressed suicidal ideations to Defendant Harrison, constituted deliberate indifference to the Plaintiff's legitimate medical needs.

### C. Denial of Due Process

38. Shortly after the release from the Central New York Psychiatric Center, a disciplinary hearing was held in regards to the August 16, 2010 incident. At the hearing, over which Defendant Rasmus presided, the Plaintiff was not provided with a fair and impartial hearing and was denied basic rights at the hearing. The Plaintiff objected to the denial of his due process rights in an effort to preserve them for appeal within thirty (30) days of the completion of such hearing. In particular, the Plaintiff was denied the right to call witnesses on his own behalf, he was never provided with any witness refusal forms and the hearing officer repeatedly and impermissibly rephrased questions posed by the Plaintiff before they could be answered by the witness so as to effectively deny the Plaintiff his constitutional right to confront his accuser(s).

### AS AND FOR A FIRST CAUSE OF ACTION

### Excessive Use of Force and Failure to Intervene

39. On or about August 16, 2010, defendants Morton, Hill, Farly, Hardy, Parish and Cavalussi used excessive force upon the Plaintiff, without justification and despite the Plaintiff's obvious disabilities and full restraint.

40. On August 16, 2010, defendants Morton and Jones, notwithstanding their position as superior officers and their authority over the other corrections officers present, failed to

intervene to prevent the assault upon the Plaintiff or otherwise exercise control over, or otherwise restrain, the corrections officers under their command.

41. As a result of the excessive use of force, failure to intervene, deliberate indifference and other action on the part of defendants Jones, Morton, Hill, Farly, Parish and Cavalussi, the Plaintiff was deprived of his civil and constitutional rights in violation of 42 U.S.C. §§ 1983 and 1985, as well as the Eighth and Fourteenth Amendments to the U.S. Constitution.

## AS AND FOR A SECOND CAUSE OF ACTION

### Deliberate Indifference

42. Plaintiff repeats and re-alleges the allegations of paragraphs "1" through "41" as if more fully set forth herein.

43. The refusal of Defendant, C.O. P. Harrison, to heed Plaintiff's complaints of harassment and mistreatment and Defendant Harrison's actions in furnishing Plaintiff with a razor, notwithstanding the fact that Plaintiff had expressed suicidal ideations to Defendant Harrison constituted deliberate indifference to the Plaintiff's legitimate medical needs.

44. Deliberate indifference to a strong likelihood of suicide implicates a liberty interest in appropriate medical treatment. As a result of the foregoing, the Plaintiff was deprived of his civil and constitutional rights in violation of 42 U.S.C. §1983, as well as the Eighth and Fourteenth Amendments to the U.S. Constitution.

## AS AND FOR A THIRD CAUSE OF ACTION

### Due Process – Disciplinary Hearing

45. Plaintiff repeats and re-alleges the allegations of paragraphs "1" through "44" as if more fully set forth herein.

46. The disciplinary hearing convened to address the Plaintiff's alleged misconduct in connection with the August 16, 2010 incident was conducted in such a way as to deprive the Plaintiff of his procedural and substantive due process rights.

47. Among other things, the Plaintiff was prevented from (1) securing evidence in his defense; (2) calling witnesses in his defense; (3) being provided with witness refusal forms; (4) fairly confronting the witnesses against him; (5) being exonerated notwithstanding the absence of any credible evidence against him; and (6) having the hearing presided over by a hearing officer who was not predisposed, biased and/or prejudiced against him.

48. As a result of the adverse finding by the hearing officer, the Plaintiff was subjected to a loss of liberty interest, including, but not limited to, additional restrictions in the terms of his confinement, loss of good time and the loss of privileges relating to telephone usage, receipt of packages and commissary, all in violation of 42. U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.

## DEMAND FOR A JURY TRIAL

Plaintiff hereby requests trial by jury on all issues so triable.

**WHEREFORE**, Plaintiff, Jessie Engles, demands judgment as follows:

A. Injunctive relief in the event the Plaintiff is confined at the Five Points Correctional Facility including, but not limited to, a judgment enjoining the Defendants, individually and collectively, and all others acting on their behalf or in their stead, from violating the Plaintiff's civil and constitutional rights, using excessive force, and otherwise violating the constitution, statutes and regulations of the United States and the State of New York governing DOCS and its employees;

B. Declaratory relief annulling the disciplinary disposition adverse to the Plaintiff in connection with August 16, 2010 incident and expunging all references thereof from Plaintiff's institutional and parole records;

C. Judgment further declaring the respective rights and responsibilities of the parties;

D.   Directing the restoration of all privileges, good time and other liberty interests which were taken away from the Plaintiff as a result of the adverse ruling following the disciplinary hearing held in connection with the August 16, 2010 incident;

E.   Awarding compensatory damages in an amount to be determined by the trier of fact against Defendants Jones, Hardy, Cavalussi, Parish, Morton, Hill, Farly and Harrison for the injuries sustained by the Plaintiff as a result of the August 16, 2010 assault;

F.   Awarding attorneys' fees to the extent allowed by law;

G.   Awarding the costs and disbursements of this action; and

H.   Granting such other and further relief as to this Court seems just and proper.

DATED:   January 11, 2019
         Rochester, New York

WOODS OVIATT GILMAN LLP

By: _____
Donald W. O'Brien, Jr., Esq.
*Attorneys for Plaintiff*
700 Crossroads Building
2 State Street
Rochester, New York 14614
585.987.2800